E-FILED
Thursday, 03 January, 2008  12:47:19 PM
Clerk, U.S. District Court, ILCD

Louis James
Reg. No. 14148-026
FCI Pekin
P.O. Box 5000
Pekin, IL 61555-5000

Appearing pro se

FILED
JAN 3 2008
JOHN M. WATERS, CLERK
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL.

IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

LOUIS JAMES,                    )
                                )
        Petitioner,              )
                                )   07-2247
                                )
    vs.                          )
                                )   No. 04 CR 20025
                                )
UNITED STATES OF AMERICA,        )
                                )
        Respondent.              )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO VACATE SENTENCE

Lewis James ("James") appearing pro se hereby submits the following memorandum of points and authorities in support of the grounds presented in his Motion to Vacate Sentence brought pursuant to 28 U.S.C. § 2255. The relevant facts, authorities and arguments are as follows:

### FACTUAL MATRIX

On April 7, 2004, James was charged in a three-count indictment with possession of 50 or more grams of cocaine base with the intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count 1), carrying and possessing a firearm in

furtherance of a drug trafficking crime, in violation of 21 U.S.C. § 924(c)(1)(A)(i) (Count 2), and felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 3).

In the interim of the commencement of trial in this case, James rarely met with his assigned attorney to prepare for the defense presented in this case. And during the few consultations James had with counsel, he was unable to discern an identifiable strategy which would be pursued by counsel at trial. In the process of the pretrial phase of the case, counsel interviewed no witnesses and failed to otherwise review the applicablle evidence with James.

In the absence of any trial preparation which would have required the government to carry its burden of proof at the ensuing trial, James was convicted of all the counts in the indictment on September 24, 2004.

On February 9, 2005, the district court sentenced James to a term of 300 months imprisonment on Count 1 and 120 months imprisonment on Count 2, to be served concurrently. In addition to the two concurrent terms, the court imposed an additional 60 month consecutive term with 10 years of supervised release and a $300.00 special assessment.

On February 14, 2005, James filed a timely notice of appeal.

During the appellate process, James was appointed new counsel after breifing was completed. At the conclusion of arguments by the parties, the United States Court of Appeals for the Seventh Circuit affirmed the conviction and sentence on September 22, 2006. However, James was neither notified by the Court that his appeal was denied or informed by his attorney about this development in the case.

A Motion to Vacate was timely filed with the district court which raises a number of constitutional issues relating to the effectiveness of both trial and appellate counsel in this case.

This timely memorandum of points and authorities follows.

## ARGUMENTS

1. James Was Denied Effective Assistance Of Counsel When His Appellate Attorney Neglected To Either File A Petition For Writ of Certiorari Or Inform James Of The Court's Denial Of His Direct Appeal.

Section 2255, Title 28 of the United States Code is available to James since his "sentence was imposed in violation of the Constitution or laws of the United States."

The Sixth Amendment gurantees the right to effective assistance of counsel in criminal proceedings. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). This right extends throughout the appellate process. Evitts v. Lucey, 469 U.S. 387, 397 (1985).

The normal inquiry for reviewing claims of attorney errors is the two-part test set forth by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 688 (1984). In <u>Strickland</u>, the court explained that in order for a habeas petitioner to be successful on a claim of ineffective assistance of counsel, a petitioner must show: (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's performance prejudiced the petitioner which resulted in an unreliable, fundamentally unfair outcome of the proceedings. <u>Id.</u> at 687.

In applying the first prong of <u>Strickland</u> to cases raising claims identical to those now presented by James, the Supreme Court has "[h]eld that a lawyer who disregards specific instructions from a defendant to file a notice of appeal acts in a manner that is professionally unreasonable." <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000). In addition, counsel has a specific duty to consult with a client about developments in the case to determine the client's wishes regarding the manner in which to proceed. <u>Id.</u>

The second prong of <u>Strickland</u> instructs courts to identify prejudice where an attorney disregards his duty to consult with the client about the status of the appeal. Prejudice should be presumed due to the fact that the attorney's ommissions deprived the client of a proceeding altogether. This is precisely what occured in this case.

In this case, James had two seperate attorneys participating in the appeal at issue. Initially, James was represented by trial counsel, Tiffany Johnson. Later, Johnson would be replaced after filing the initial brief in James' appeal. While James' appeal was pending before the United States Court of Appeals for the Seventh Circuit, James made numerous inquiries to both attorney Johnson and replacement counsel, Jonathan Hawley. Few of which met with a response.

Unbeknownst to James, the Seventh Circuit had affirmed his conviction and sentence on September 22, 2006. However, the Seventh Circuit did not immediately provide James with a copy of the decision and James' attorney did not notify him of the denial of his direct appeal. Instead, James found out about his appeal being denied after receiving a solicitation letter from Paralegal Research Associates on October 12, 2006. See Exhibit A.

At first James believed the letter was a mistake because he had never been contacted by his attorney. However, on approximately October 30, 2006, James sent a letter to attorney Hawley requesting to learn of the status of his direct appeal before the Seventh Circuit. In addition, James also called the lawyer's office and left messages because the lawyer was not in when he called.

Despite James' efforts, James was not informed of the appellate court's decision until mid-January of 2007 — after it was too late to petition the United States Supreme Court for a Writ of Certiorari or request a rehearing of the Seventh Circuit's opinion. As such, James was denied the opportunity to receive the appellate review which was available to him.

The facts and arguments stated herein warrant the scheduling of an evidentiary hearing on this matter and relief in the form of allowing James to file a petition for rehearing or writ of certiorari to the United States Supreme Court.

2. James Was Denied Effective Assistance Of Counsel Where Counsel Neglected To Interview Specific Witnesses And Adequately Investigate In Anticipation Of Trial.

Settled precedent discloses that the type of assistance envisioned by the Sixth Amendment's guarantee includes the effective assistance of counsel. This duty can only be discharged where counsel conducts adequate investigation in preparation of trial. See United States v. ex rel. Cross v. DeRobertis, 811 F.2d 1008 (7th Cir.1987). In certain circumstances, adequate investigations include interviewing defense witnesses and arranging for these witnesses to appear at trial for the purpose of testifying. See United States v. Johnson, 658 F.2d 1176 (7th Cir.1981).

Specifically, James asserts that counsel's failure to interview and call to testify both Tiara Woods and Evita Boey in preparation of his defense constitutes ineffective assistance.

A. <u>The Search.</u>

James contends that the officers who conducted the search of 459 East Johnson used deception and trickery to gain entry in to the home and therefore violated the Fourth Amendment's prohibition against unreasonable search and seizure. <u>See</u> e.g., <u>United States v. Berkowitz</u>, 429 F.2d 921 (1st Cir.1971). Would counsel have interviewed both Woods and Boey, the evidence seized at the East Johnson Street residence would have been suppressed.

During the criminal proceedings in this case, James had numerous opportunities to discuss the search of the East Johnson residence with both Evita Boey and Tiara Woods (the occupants of the home). In a description of the events — which is far different than the account offered by law enforcement — both Woods and Boey explain that the officers approached the residence claiming to have recently chased James in the area. Officers explained to Boey — the owner of the home — that the police merely wanted to search the residence to look for James. Because both knew that James was not in the residence, Boey reluctantly agreed to allow the officers to search.

What followed next was that law enforcement officers entered the East Johnson Street residence and began conducting an intricate search of the home which included places which were smaller than James could possibly fit in. Eventually, officers claimed to have discovered an amount of illegal drugs in a shoebox which both Woods and James were ultimately charged with. 1/

Boey explained to James that she would have never consented to the search if she did not reasonably believe that the search would be limited to looking for him rather than an extensive search of the premises. As such, the search of the East Johnson Street clearly violated the Fourth Amendment and counsel rendered ineffective assistance as a result of her neglect in failing to interview these witnesses.

B. The Shoebox

As mentioned above, trial counsel neglected to interview two specific witnesses which would have bolstered James' defense to the charges in the indictment. Thr trial testimony and evidentiary materials submitted in this case reveals that an amount of cocaine and an amount of marijuanna was discovered by poilce in a shoebox at the East Johnson Street residence subequent to a search. See Trial Transcripts ("Tr__"), at 93-94.

When interviewed, Tiara Woods acknowledged moving the shoebox when she knew the police were outside because she believed the box contained high grade marijuanna which James had placed there. However, the box allegedly contained cocaine after a search was conducted.

Interestingly, the shoebox contained a pair of shoes which neither fit James, Woods or Boey. But the shoes did match the size of the government's main witness in the case, Bradley Collier. Although counsel eluded to the possibility that both the box and the illegal contents belonged to Collier at trial, counsel's failure to interview both Woods and Boey deprived James of an opportunity to elicit direct evidence on this subject. In fact, counsel altogether neglected to present _any_ witness testimony at all. Such an ommission constitutes ineffective assistance and violated James' Sixth Amendment constitutional rights. See e.g., Groseclose v. Bell, 130 F.3d 1161 (7th Cir.1997).

James spoke to both Tiara Woods and Evita Boey prior to trial and both agreed to testify on James' behalf if called to do so. Notwithstanding, counsel refused to either interview them or arrange for their attendance at trial which left James without any viable defense to the charges at issue.

3. **Trial Counsel Was Innefective For Failing To Seek Dismissal Of The Indictment Based Upon The Government's Outrageous Conduct During The Search Of The Johnson Street Residence.**

The Due Process Clause of the Fifth Amendment warrants the dismissal of an indictment if the government engages in outrageous conduct which shocks the conscious. See United States v. Mitchell, 957 F.2d 465 (7th Cir.1992). Where as here, law enforcement engaged in coercive and deceptive behavior to obtain the evidence used to convict James, his attorney was ineffective for failing to seek dismissal of the indictment in the instant case.

As indicated above, law enforcement authorities responsible for the search of the East Johnson Street residence deceptively gained entrance to the home for purposes of obtaining evidence in violation of the occupants' Fourth and Fifth Amendment rights. This evidence later served as the basis for the charges against James and Tiara Woods even though it resulted from a search which was premised on deception.

Would the occpuants have known that police wanted to search the residence for any other reason than to locate James (who they knew was not there), Evita Boey would not have consented to the search. James contends that counsel was ineffective for neglecting to seek dismissal of the indictment on these grounds.

> 4. Counsel Was Ineffective For Failing To Argue That James Federal Prosecution Violated Governing Principles Of Equal Protection and Selective Prosecution Where His Codefendants Were Both Prosecuted By The State And Received Significantly Lower Sentences.

Where a forum for criminal charges is either improperly motivated or based on an impermissible classification, a violation of equal protection and the Fifth Amendment occurr. See e.g., United States v. Morehead, 959 F.2d 1489 (10th Cir.1992). Such a violation can occurr when a decision to prosecute a criminal defendant federally rather than in the state is based on an improper motivation. See United States v. Bassford, 812 F.2d 16 (1st Cir.1987). James presents that law enforcement in this case gave no such reasonable justification as to why they chose to prosecute him federally rather than allow him to be prosecuted by the State of Illinois like his codefendants, Bradley Collier and Tiara Woods.

James contends that Illinois officials chose to refer his case to federal authorities after they determined that the search of both the William and Johnson Street residences suffered from infirmities which would leave the evidence recovered subject to supression in the state court. Although claimed by law enforcement at the time of the aforementioned searches, police contained no independent source to corroborate James' alleged drug activity

other than that of Bradley Collier. Proof of this assertion can be gleaned from the fact that the government neglected to provide evidence relating to this independent source at either trial or the suppression hearing conducted in this matter.

However, the fact that both Collier and Woods received substantially lower sentences than James did as a result of their state prosecutions is sufficient to warrant a determination that James' equal protection rights were violated when he was prosecuted by federal authorities. Despite the obviousness of this potential defense to the prosecution initiated against James, counsel altogether failed to pursue such a claim or investigate the basis for the federal autorities decision to prosecute James rather than allow the state authorities to do so. For these reasons, James submits that trial counsel rendered ineffective assistance.

5. Trial Counsel Was Ineffective For Failing To Conduct Adequate Consultations With Her Client Before Proceeding To Trial.

Throughout the entire time James was in pretrial detention awaiting trial in this case, his trial lawyer visited him a total of four times. These consultations were very brief, with counsel being completely unaware of any evidence relating to the case on at least two of these four occassions. At no time during the

course of the proceedings at issues did James' trial attorney advise him regarding potential defenses in the case or discuss the evidence in the case with him. Counsel did not ask James' opinion about which defense would be pursued or ask him which witnesses to call before trial.

This lack of preparedness alleged by James is evident throughout the trial record and within the knowledge of this Court seeing how the Court admonished counsel on numerous occassions. Trial Transcript, at 61-63. Counsel admittedly did not receive relevant police reports neccessary to prepare James defense as late as the night before trial. Id. at 64-65. Counsel even waived James' defense in a substantial part of the trial proceedings without his consent. Id. at 280-315.

Combined with counsel's obvious lack of preparation, counsel exhibited an evident level of incompetence with regard to misunderstanding basic rules of evidence. See id. at 292 (counsel explaining that testimony which clearly falls within the purview of expert testimony encompassed by FRE 702 actually constutued lay opinion testimony covered by FRE 701). This basic misunderstanding of simple legal principles necessary to counsel's adequate representation of James permeated throughout the trial and record generated in this matter.

James contends that these collective facts clearly establish that James was denied the type of effective assistance guaranteed by the Sixth Amendment and actually resulted in a constructive denial of counsel during the pretrial and trial phases of his criminal prosecution.

6. Counsel Was Ineffective For Failing To Challenge The Factual Basis for the William Street Search.

The Supreme Court had held that a reviewing court must take into account the totality of the circumstances rather than adhere to a fixed rigid formula when determining whether probable causes exists based on information from a confidential informant. Massachusetts v. Upton, 466 U.S. 727 (1984). Consistent with the prescribed inquiry, James contends that the totality of the circumstances present in his case do not constitute a justifiable basis for the search conducted on the William Street residence.

In this matter, law enforcement officers relied on the statements given by government witness, Bradley Collier, and an alleged confidential source who remained unidentified at the conclusion of trial. Trial Transcript, at 37-39, 350-404. However, Collier was dishonest with police during their initial contact with him, provided law enforcement with a bogus identity and was an altogether dishonest person from his own admissions during trial. Id. at 400-402. Information from

this individual was supposedly taken in conjunction with that of another unnamed source and formed probable cause to search the William Street residence. Id. at 37-39 (describing an unidentified source who claimed James was in possession of significant quantities of illegal drugs).

James presents that trial counsel was ineffective for failing to require law enforcement to reveal the identity of this unknown indivudal during the scheduled suppression hearing conducted in this matter. James believes that there is no such individual and that law enforcements claims were fabricated in that sense, thereby nehating probable cause to conduct a search at the William Street address. Counsel improperly fofeited an opportunity to challenge the reliability of this alleged informant as a basis for probable cause and otherwise take issue with the good faith of the officers who applied for the warrant.

For the above stated reasons, James contends that the "probable cause" for executing the warrant for the Williams Street address rests on constitutional infirmities and resulted from bad faith on behalf of the officers involved. Since this issue was completely abandoned by counsel and could have rightfully led to the supression of the evidence obtained as a result thereof, James claims counsel was clearly ineffective.

## CONCLUSION

WHEREFORE, James respectfully prays that this Honorable Court grant relief in this matter for the reasons set forth above and grant any relief deemed fair, just and equitable in this matter.

## REQUEST FOR AN EVIDENTIARY HEARING

James presents that the factual averments set forth herein warrant the scheduling of an evidentiary hearing to resolve factual allegations which occurred outside of the presence of the trial court and are not capable of being resolved by reviewing the trial record.

## REQUEST FOR APPOINTMENT OF COUNSEL

Consistent with the Rules Governing Section 2255 Proceedings, James asks the district court to appoint counsel in this matter to assist him in the preparation of future pleadings and to advise him how to proceed in the matter of these Section 2255 proceedings.

Dated: December 21, 2007

Respectfully submitted,

*Louis James*
Louis James
Reg. No. 14148-026
FCI Pekin
P.O. Box 5000
Pekin, IL 61555-5000

Appearing pro se

## DECLARATION

I hereby affirm under penalty of perjury and pursuant to 28 U.S.C. §1746, that the foregoing is true and correct based upon my knowledge and belief pertaining to the matters herein stated.

Dated:   December 21, 2007          Louis James
                                    Reg. No. 14148-026
                                    FCI Pekin
                                    P.O. Box 5000
                                    Pekin, IL 61555-5000

                                    Appearing pro se

EXHIBIT A

  

# Paralegal Research Associates
### Dennis Deters, Vice President
21319 Hwy 33, Spring Grove, MN 55974 -- Phone 507-498-3058
Offices: Spring Grove, MN -- Minneapolis, MN -- Arden Hills, MN
WEB SITE: www.ParalegalResearchUSA.com       EMAIL: deters1@springgrove.coop

October 6, 2006

Louis James
14248-026
P.O. Box 5000
Pekin, IL 61555

Dear Mr. James:

    Twice a month, our paralegal analysts review all of the current decisions in all the criminal appeals in all of the Courts of Appeals in the United States. While conducting this review, the decision in which your appeal was denied by the Court of Appeals caught the attention of one of our case analysts. While we reject most cases, the analyst has a couple of ideas which he believes could vacate your conviction and/or reduce your sentence, but would need to analyze your case in more detail before he can supply additional specifics.

    If you would like us to perform this more detailed analysis of your case for you and licensed legal counsel,[1] we invite you to send us a letter with a copy of your BOP "sentence computation sheet" and the name, address, and phone number of someone we can contact to pass on any messages to you. Please include a short, informal note telling us which transcripts you have and any special issues or details we should know about. Please do *not* send additional court documents until requested. We already have access to substantial electronic records in your case. Also, please note that, if we accept your case, we can assist you in obtaining the transcripts and the *rest* of your court case file. This is part of our services.

    There is **NO CHARGE & NO OBLIGATION** for this initial, more detailed analysis. **IT IS FREE**. If the analyst confirms what he now believes is an option for you to vacate your conviction and/or reduce your sentence, we will inform you and propose a written retainer agreement with you. At **that** point, if you want **further** services, you will have to sign a retainer agreement. **After** signing the retainer agreement, any **additional work** on your case will **then** be billed at our usual rate of **$39 per hour** pursuant to the retainer agreement.

    For your general information, Paralegal Research Associates is an association of paralegals, not attorneys.[1] We utilize numerous computer systems in our research and case analysis. We, of course, have case law available to us within hours of the court decisions. We also have immediate, 24 hours per day, access to the electronic records of all the federal courts. We provide case analysis and document preparation, ("the thinking, the research, the composition *and* the writing of appeal & 2255 briefs") for our clients and licensed legal counsel nationwide.[1] Since we provide a lot of these services we can offer these low prices. We don't try to, and don't need to, make all our money off 1 or 2 clients.

    Since the vast majority of attorneys employ paralegals to perform the vast majority of their research and writing, it makes sense to *choose* your paralegal instead of accepting the 'luck of the draw'. We therefore invite you to "risk" a postage stamp and a few minutes to allow us to analyze your case.

Yours very truly,

*Dennis Deters*
**Dennis Deters, Vice President**
**Paralegal Research Associates**

Encl.

---

[1] PRA works with licensed legal counsel consistent with the mandate of *Matter of Jorissen*, 391 N.W.2d 822, 825 (Minn. 1986).
Se Habla Espanol.